**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1684-19

IN THE MATTER OF
FATU RIMBERT, ESSEX
COUNTY DEPARTMENT
OF CITIZEN SERVICES.

_____

Argued August 2, 2021 – Decided August 18, 2021

Before Judges Mayer and Susswein.

On appeal from the New Jersey Civil Service Commission, Docket No. 2019-578.

Obayomi Awoyinfa, (Law Offices of Obayomi Awoyinfa) of the New York bar, admitted pro hac vice, argued the cause for appellant Fatu Rimbert (Ejike N. Uzor and Obayomi Awoyinfa attorneys; Ejike N. Uzor, on the briefs).

Robin Magrath, Director of Labor Relations, argued the cause for respondent Essex County Department of Citizen Services (Courtney Gaccione, Essex County Counsel, attorneys; Robin Magrath, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Fatu Rimbert appeals from a November 12, 2019 final administrative decision of the Civil Service Commission (Commission) affirming her removal as a family service worker for the County of Essex (County), Department of Citizen Services, Division of Family Assistance and Benefits (DFAB). We affirm.

On November 28, 2017, the County removed Rimbert as a family service worker pending criminal charges for two counts of insurance fraud, two counts of impersonation, and one count of theft by deception. As part of a negotiated plea, Rimbert pleaded guilty to third-degree insurance fraud. She was sentenced to probation and ordered to pay restitution.

Following her guilty plea, the County sought to permanently remove Rimbert from her employment for violation of the following: N.J.A.C. 4A:2-2.3(a)(3), inability to perform duties; N.J.A.C. 4A:2-2.3(a)(5), conviction of a crime; N.J.A.C. 4A:2-2.3(a)(6), conduct unbecoming a public employee; and N.J.A.C. 4A:2-2.3(a)(12), other sufficient causes associated with violation of County policies and procedures. Based on the guilty plea, the County also asserted Rimbert should be terminated under N.J.S.A. 40A:9-2.1(e), disallowing access to confidential tax information if an employee has a criminal record.

The County issued a Final Notice of Disciplinary Action (FNDA) reflecting Rimbert's removal from employment as a family service worker. Rimbert appealed her removal to the Commission, and the matter was transmitted to the Office of Administrative Law.

An administrative law judge (ALJ) was assigned to the matter and held a hearing on November 26, 2018. The ALJ heard testimony from two County officials familiar with Rimbert's removal from her job. According to the head of the DFAB, family service workers identify financial resources for applicants requesting benefits from other governmental agencies. These individuals review sensitive documents to determine an applicant's financial eligibility for governmental assistance. The documents reviewed by family service workers include social security information, tax information, birth certificates, and other confidential family information. Further, family service workers have access to databases containing this information and must access the information to perform their job. Because public employees have a fiduciary responsibility to conduct themselves in a manner that secures the public's confidential information, the head of the DFAB testified Rimbert's crime impacted her ability to perform her job, and there were no positions within the County that did not require Rimbert to access confidential information.

A-1684-19

In addition, the County presented testimony from a witness who held the position of County Administrator and Director of Human Resources (Administrator).[1] Given the nature of Rimbert's job responsibilities, specifically review of confidential information, the Administrator testified the County was required to ensure her job was performed with the utmost integrity and trust. The Administrator testified Rimbert was ineligible to continue as a family service worker based on the crime she committed. He further explained Rimbert's criminal matter was not the type of case to be resolved by a working suspension and probationary period. Therefore, according to the Administrator, removal was the sole remedy.

The ALJ also heard testimony from Rimbert. She admitted her work included the review of medical information, financial information, birth

---

[1] Rimbert argues expert testimony was required for the ALJ to render a determination. We disagree. The ALJ's assessment of Rimbert's conduct leading to her conviction for insurance fraud did not require scientific, technical, or special expertise under N.J.R.E. 702. Based on the testimony of the County's witnesses, the ALJ found Rimbert's conviction alone implicated the standard of good behavior inherent in a public employee's position of trust and honesty. See Appeal of Tuch, 159 N.J. Super. 219, 224 (App. Div. 1978) ("[M]isconduct of a police officer need not be predicated upon the violation of any particular rule or regulation, but may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct.") (citing City of Asbury Park v. Dep't of Civil Serv., 17 N.J. 419, 429 (1955)).

A-1684-19

certificates, and other confidential information. Rimbert acknowledged her responsibility to refrain from behaviors contrary to the best interests of the public and the County.

In addition to the witness testimony, the ALJ reviewed the County's written policy applicable to all employees. According to the policy document, employees shall "refrain from behavior or conduct deemed offensive or undesirable, or which is contrary to the County's best interest." The policy also stated, "conduct that interferes with the operation of the government, discredits the County of Essex, or is offensive to the public or fellow employees shall not be tolerated." Under the policy, an employee who exhibits such behavior or conduct "may be subject to disciplinary action, including dismissal."

Based on the testimony and documentary evidence, the ALJ made the following fact findings. As part of her job duties as a family service worker, "Rimbert reviewed various confidential client documents including medical information, financial information, federal tax information, social security numbers, birth certificates, addresses of clientele and family members." In 2017, while employed as a County family service worker, Rimbert was criminally charged with fraud, impersonation, and theft by deception. She was suspended from employment without pay pending the outcome of the criminal

charges. She pleaded guilty to insurance fraud in December 2017 and was sentenced in April 2018.

The ALJ also rendered credibility determinations, finding the County's fact witnesses "to be credible as they have testified to facts stipulated in evidence . . . ." He also found Rimbert's testimony to be credible. Because the State did not seek forfeiture of Rimbert's employment as part of the negotiated plea, the ALJ concluded Rimbert had no knowledge "her criminal conviction could result in her termination . . . ."[2]

In a September 18, 2019 initial decision, the ALJ sustained three of the County's four charges against Rimbert. He sustained the charge of conduct unbecoming a public employee because Rimbert's conviction for insurance fraud, a crime involving dishonesty, had a tendency to destroy the public's respect for governmental employees and confidence in the operation of governmental services. He also sustained the charge of other sufficient causes, finding Rimbert's conviction constituted a violation of the County's policies and procedures. Further, the ALJ sustained the charge of conviction of a crime based on Rimbert's guilty plea.

---

[2] There is no evidence in the record Rimbert's negotiated plea agreement included a provision her employment with the County would be unaffected by entry of a guilty plea.

A-1684-19

However, the ALJ concluded the County failed to meet its burden of proving by a preponderance of the evidence Rimbert's criminal conviction was a violation of N.J.A.C. 4A:2-2.3(a), automatically disqualifying her from performing the duties of a family service worker. He held the County failed to prove the only available jobs required access to client personal and financial data.

After sustaining three of the County's charges, the ALJ reversed the County's decision to remove Rimbert from her job. He found the County "ha[d] not proven by a preponderance of the evidence that Rimbert's criminal conviction automatically result[ed] in her 'inability to perform her duties' as contained in the FNDA." The ALJ ordered the County to reinstate Rimbert, subject to imposition of a six-month suspension without pay for the time period November 18, 2017 through May 18, 2018. He also imposed a one-year probationary period.

The Commission, in a November 12, 2019 written decision, adopted the ALJ's fact findings and legal conclusions but rejected the ALJ's recommended six-month suspension of Rimbert and upheld her removal as a family service worker. The Commission observed "the appropriate inquiry in evaluating the charge of inability to perform duties is whether the employee is able to perform

all of the essential duties . . . in the employee's job title" and "does not require an appointing authority to prove that it has no other jobs the subject employee could perform." Because N.J.S.A. 40A:9-2.1(e) bars Rimbert from accessing federal tax information as a result of her criminal conviction, the Commission concluded she was unable to perform her responsibilities as a family service worker.[3] Further, the Commission determined Rimbert's conviction for insurance fraud raised significant questions whether she should be entrusted with confidential tax, financial, medical, and vital statistics information, which she was required to access and review as part of her job responsibilities.

In addition, the Commission recognized some disciplinary infractions are so serious removal is appropriate notwithstanding a largely unblemished prior record. The Commission found Rimbert's "insurance fraud conviction raises significant questions about her ability to be trusted with access to such sensitive

---

[3] Rimbert bore the burden of demonstrating her rehabilitation to surmount her disqualification from having access to federal tax information as a result of her criminal conviction. See N.J.S.A. 40A:9-2.1(f). Despite having ample opportunity during the testimonial hearing before the ALJ, Rimbert failed to offer clear and convincing evidence of her rehabilitation as required by the statute.

information."  Even if Rimbert had an unblemished disciplinary record,[4] the Commission concluded the seriousness of her misconduct warranted removal as the appropriate penalty.

On appeal, Rimbert argues the Commission's decision to remove her from employment was arbitrary, capricious, and unreasonable.  We disagree.

Our scope of review of an administrative agency's final determination is limited.  In re Herrmann, 192 N.J. 19, 27 (2007).  An administrative agency is presumed to have acted reasonably.  In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993).

The burden is upon the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence."  In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

---

[4]  In her seven years with the County, the Commission noted Rimbert had two minor disciplinary sanctions in February 2014 and March 2015, and a nine-working day suspension in June 2016.  Rimbert's prior disciplinary history while working for the County involved lateness and absenteeism rather than fraud or dishonesty.

Where an agency's decision satisfies the foregoing criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We do not second-guess or substitute our judgment for that of the agency and, therefore, we do not "engage in an independent assessment of the evidence as if [we were] the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28 (citing Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 431-32 (1975)). "In light of the deference owed to such determinations, when reviewing administrative sanctions, 'the test . . . is "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness."'" Id. at 28-29 (alteration in the original) (quoting In re Polk, 90 N.J. 550, 578 (1982)). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." Id. at 29. Certain infractions are so serious as to justify the penalty of removal even where

10

the employee has a relatively clean disciplinary record. In re Carter, 191 N.J. 474, 484 (2007).

Having reviewed the record, we discern no basis for disturbing the Commission's decision to remove Rimbert from employment as a family service worker after her criminal conviction for insurance fraud. Her crime involved dishonest conduct directly impacting her job responsibility to preserve trust and confidence on behalf of applicants seeking governmental benefit assistance. It was Rimbert's dishonest conduct, insurance fraud, that led to her dismissal from employment. Under the circumstances, the Commission's determination, based on the undisputed evidence in the record, was not arbitrary, capricious, or unreasonable.

In addition, the credible evidence in the record supports the Commission determination the sustained charges were serious enough to warrant Rimbert's removal from her job. Because Rimbert's job responsibilities included access to personal financial information and other confidential documents, her fraud conviction impacted her ability to be trusted with access to such sensitive information and had a tendency to destroy public respect for governmental employees and confidence in the operation of governmental services. See In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960).

To the extent we have not addressed Rimbert's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1684-19